UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFF S. WILK,<br><br>               Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>               Defendant. | Case No. C13-642-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Jeff S. Wilk seeks review of the denial of his benefits applications. He contends the ALJ erred by (1) misevaluating Mr. Wilk's credibility, (2) misevaluating the lay witness testimony, and (3) failing to comply with Social Security Ruling ("SSR") 00-4p at step five of the five step disability evaluation process. As discussed below, the Court concludes that the ALJ properly evaluated Mr. Wilk's credibility and the lay witness testimony but committed harmful error at step five. The Court therefore recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

The parties agree the ALJ's October 18, 2011 decision, which found Mr. Wilk not disabled, is the Commissioner's final decision. Utilizing the five-step disability evaluation

REPORT AND RECOMMENDATION - 1

process, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found:

> **Step one:** Mr. Wilk had not engaged in substantial gainful activity since September 28, 2006.
>
> **Steps two and three:** Obesity, bilateral arthritis in the knees, and MCL tear in the right knee were severe impairments that did not meet or equal the requirements of a listed impairment. *See* 20 C.F.R. Part 404, Subpart P. Appendix 1.
>
> **Residual Functional Capacity:** Mr. Wilk could perform sedentary work except he must be allowed to alternate sitting and standing, with a maximum of one hour sitting, then one minute standing, and this pattern to repeat throughout the eight-hour workday. In addition, he should not work at any height or on any uneven surface.
>
> **Steps four and five:** Mr. Wilk could not perform his past work, but he could perform jobs that exist in significant numbers in the national economy.

Tr. 21-29.

## DISCUSSION

**A.    *The ALJ did not err in finding Mr. Wilk less than fully credible***

Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ discounted Mr. Wilk's credibility for four reasons: (1) he did not follow the advice of his treating physicians with regard to weight loss; (2) his reports regarding the date he became disabled were inconsistent and contradictory; (3) he reported that he stopped working to relocate to Washington State, not because of his medical condition; and (4) he did not see a doctor for three of the years he claimed he was disabled. Tr. 25-26.

Mr. Wilk's challenge to the ALJ's adverse credibility finding touches on only one of the reasons provided by the ALJ: his failure to follow his doctor's advice regarding weight loss. Dkt. 20 at 18-19. Yet the ALJ provided other unchallenged reasons, which are clear, convincing, and supported by substantial evidence. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider . . . inconsistencies

REPORT AND RECOMMENDATION - 2

either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."); *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2011) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment . . . ." (quotation and citation omitted)).  Therefore, even assuming the ALJ erred as Mr. Wilk argues, Mr. Wilk has not established harmful error.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons, to discount a claimant's credibility is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall credibility determination).  Accordingly, the Court recommends affirming the ALJ's credibility finding.

**B.      *The ALJ did not err in his treatment of the lay witness testimony***

Loren Street, Mr. Wilk's brother-in-law, testified during the hearing regarding his observations of Mr. Wilk's physical limitations.  The ALJ found that "Mr. Street's observations are consistent with the evidence in the record as a whole and his testimony is credible."  Tr. 27.  The ALJ thus was required to incorporate the limitations attested to by Mr. Street into the RFC.  *See* Social Security Ruling ("SSR") 96-8p (RFC is the most a claimant can do considering his or her limitations or restrictions).[1]

Mr. Wilk argues that the ALJ erred by failing to incorporate into the RFC Mr. Street's observation that Mr. Wilk "sat about thirty to forty-five minutes before standing" and instead

---

[1] Although SSRs do not have the force of law, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 3

found that Mr. Wilk could sit for an hour at a time.  Dkt. 20 at 17.  Specifically, Mr. Wilk points to Mr. Street's response to a question about how long Mr. Wilk could sit:  "I would say, at least maybe, you know, between like a half an hour and 45 minutes at that point."  Tr. 56.  The Commissioner responds that "the ALJ's finding is not inconsistent with Mr. Street's testimony; it is merely that Plaintiff interprets Mr. Street's testimony differently than the ALJ."  Dkt. 24 at 14.

The Court agrees with the Commissioner.  Mr. Street did not testify that Mr. Wilk was limited to sitting for no more than 45 minutes.  Rather, he was asked "approximately" how long Mr. Wilk could sit and responded "at least" 30 to 45 minutes.  Tr. 56.  It therefore was reasonable for the ALJ to find that Mr. Street's observations were consistent with the record as a whole and the RFC, which limited Mr. Wilk to a maximum of one hour sitting before standing for a minute.  As such, although Mr. Wilk's interpretation of Mr. Street's testimony may be reasonable too, the Court must affirm.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Hence, the Court recommends affirming the ALJ's RFC determination.

C.      **The ALJ committed harmful error at step five**

At step five, the Commissioner has the burden to show that the claimant can perform other work that exists in significant numbers in the national economy, given the claimant's age, education, work experience, and RFC.  *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).  The Commissioner can meet this burden by eliciting the testimony of a vocational expert ("VE").  *Id.* at 1101.  Here, a VE testified at the hearing, and based on her testimony, the ALJ found that given Mr. Wilk's age, education, work experience, and RFC, he could work as a "call out operator DOT 237.367-014, sedentary, SVP2, with 250 jobs in Washington State and 14,000

REPORT AND RECOMMENDATION - 4

jobs in the national economy, and surveillance monitor DOT 379.367-010, sedentary, SVP2, with 250 jobs in Washington State and 7,700 jobs in the national economy."[2] Tr. 28; *see also* Tr. 60-61 (VE's hearing testimony). The ALJ also found that the VE's testimony was "consistent with the information contained in the [DOT]." Tr. 61.

Mr. Wilk contends the ALJ erred by relying on the VE's testimony without first asking her whether her testimony conflicts with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. Dkt. 20 at 5-6. He further argues that there were, in fact, three conflicts between the VE's testimony and the DOT, which the ALJ neither recognized nor resolved. *Id.* at 7-11. It thus was improper, according to Mr. Wilk, for the ALJ to rely on the VE's testimony that he could work as a call-out operator and surveillance system monitor, and consequently, substantial evidence does not support the ALJ's step five finding. *Id.* at 11-13. For the reasons discussed below, the Court agrees that the ALJ's step five finding is not supported by substantial evidence.

Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to ask whether a VE's testimony conflicts with the DOT, and, if there is a conflict, whether there is a reasonable explanation for such conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). SSR 00–4p also requires the ALJ to explain in the decision how he or she resolved any conflict. An error in following the procedural requirements of SSR 00-4p may be harmless if there is no conflict or if the VE has "provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19; *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[A]n ALJ may rely on expert testimony which contradicts the DOT,

---

[2] "SVP" stands for "specific vocational preparation." SSR 00-4p. An SVP of 2 corresponds with unskilled work. *Id.*

REPORT AND RECOMMENDATION - 5

but only insofar as the record contains persuasive evidence to support the deviation.").[3] Evidence sufficient to justify potential conflicts "may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted). If, however, there is a conflict between the VE's testimony and the DOT, and also insufficient support in the record for the VE's conclusion, the reviewing court is unable to determine whether substantial evidence supports the ALJ's step five findings and remand is appropriate. *See Massachi*, 486 F.3d at 1154.

### 1. *The ALJ failed to comply with SSR 00-4p*

First, Mr. Wilk avers the ALJ erred by failing to ask the VE whether her testimony was consistent with the DOT and whether there was a reasonable explanation for any inconsistency. Dkt. 20 at 6, 11-12. The Court agrees. Although the ALJ's written decision states that the VE's testimony was consistent with the DOT, at no time during the hearing did the ALJ pose the required questions to the VE. *See* Tr. 59-66. This was error. *See Massachi*, 486 F.3d at 1154; SSR 00-4p. The Commissioner nevertheless argues, "While the ALJ did not specifically ask the vocational expert if her testimony was consistent with the DOT, he fulfilled his duty [by asking whether the occupations would permit a sit/stand option] because [this question] asked her to address any conflict created by a sit/stand option." Dkt. 24 at 3. The Commissioner cites no authority supporting her assertion that an ALJ fulfills his duty to ask about consistency with the DOT by posing a narrow question directed at understanding whether the identified occupations align in only one respect with the RFC. As such, the Court is not persuaded that the ALJ fulfilled his SSR 00-4p responsibility here.

---

[3] *Johnson* predated SSR 00-4p, however its holding was reaffirmed in *Massachi*, 486 F.3d at 1154 n.19.

REPORT AND RECOMMENDATION - 6

### 2. There were conflicts between the DOT and the VE's testimony

Mr. Wilk maintains that that the ALJ's failure to comply with SSR 00-4p was not harmless because the VE's testimony conflicts with the DOT with respect to: the period of uninterrupted sitting that "sedentary" work requires for both the call-out operator and surveillance system monitor; the duties of the call-out operator; and the duties of the surveillance system monitor. Dkt. 20 at 7-11. The Court will address each claimed conflict in turn.

#### a. Period of uninterrupted sitting

Mr. Wilk argues that the VE's testimony conflicts with the DOT with respect to the period of interrupted sitting that "sedentary" work requires for both the call-out operator and surveillance system monitor. Dkt. 20 at 7. Specifically, he points out that "sedentary" work requires the ability to sit for two hours at a time, *see* SSR 96-9p, but the VE testified that the "sedentary" positions of call-out operator and surveillance system monitor required sitting only one hour at a time, Dkt. 20 at 7-8. The Court agrees that there is an apparent conflict between the DOT, which describes the call-out operator and surveillance system monitor occupations as requiring the ability to sit for two hours at a time, and Mr. Wilk's RFC, which limits him to sitting for a maximum of one hour at a time before standing for a minute. *See* SSR 83–12 (a person who must alternate periods of sitting and standing "is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work"); SSR 96–9p ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

Mr. Wilk asserts that because the ALJ incorrectly denied there was a conflict and thus did not resolve the conflict in his written decision as required by SSR 00-4p, any attempt to justify

REPORT AND RECOMMENDATION - 7

the conflict now amounts to an improper post hoc rationalization.  Dkt. 20 at 11-12; *see also* Dkt. 25 at 4-5.  In this particular situation, however, the Ninth Circuit has expressly authorized the Court to review the VE's hearing testimony to determine whether the VE "provided sufficient support for her conclusion so as to justify" the conflict.  *Massachi*, 486 F.3d at 1154 n.19.  The Court finds the VE provided such support.  In response to the ALJ asking whether the call-out operator and surveillance system monitor occupations would allow Mr. Wilk to alternate sitting and standing as provided for in the RFC, the VE replied, "Yes, definitely."  Tr. 61.  With respect to the call-out operator, the VE explained that she spoke monthly with the primary employer in Washington State.  Tr. 63-64.  As to the surveillance system monitor, she explained that an employee could perform the job while sitting or standing because the employee could see a computer screen from both positions.  Tr. 61-62.  She further testified that it would be permissible for the employee to take a five to ten minute break every hour to "move away from the work station, lean up against a wall, or rest, or do some type of stretching."  Tr. 63.  There is no reason to question the VE's testimony.  As such, any error in failing to comply with SSR 00-4p as to the period of uninterrupted sitting was harmless.[4]  *See Massachi*, 486 F.3d at 1154.

### b.   *Duties of the call-out operator*

Mr. Wilk also argues the VE's testimony conflicted with the DOT with respect the duties of the call-out operator.  Dkt. 20 at 9.  The DOT describes the call-out operator's duties as follows:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone.  Copies information onto form to update information for credit record on file, or for computer input.

---

[4] Mr. Wilk raises additional points in his reply brief, *see* Dkt. 25 at 4-6, which the Court has considered and finds unavailing.

REPORT AND RECOMMENDATION - 8

> Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

DOT 237.367-014. The VE testified that the call-out operator works for charities to solicit donations:

> What happened after 9/11, people did not donate as they had in the past; and so, we used to have thousands of these people, banks and banks of telephones call you, asking you to contribute to the vets, to Goodwill, to the disabled, to this one and that one. But the trucks became too costly to operate; so, now, it's basically the [Society for the Blind] that [is] doing this . . .

Tr. 64. Mr. Wilk maintains that the occupation the VE described "has nothing to do with compiling credit information, copying information for a credit file, and telephoning subscribers to provide or obtain information." Dkt. 20 at 9. The Commissioner does not challenge this argument. *See* Dkt. 24 at 5-6. Given the differences between the DOT's and VE's descriptions of a call-out operator, the Court concludes that there is at least a potential conflict.

Mr. Wilk further contends that the description of the call-out operator given by the VE is akin to that of a telemarketer or telephone sales representative described in DOT:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities.

DOT 299.357-014. This difference is important, according to Mr. Wilk, because telemarketer, with an SVP of 3, is a semi-skilled occupation, and therefore the ALJ was required to identify transferable skills pursuant to SSR 82-41. Dkt. 20 at 10; *see also* SSR 00-4p ("[S]emi-skilled work corresponds to an SVP of 3-4 . . . ."); *Marsh v. Astrue*, No. C11-1559-RSM-JPD, 2012 WL 4056637, at *3 (W.D. Wash. Jun. 18, 2012) ("Under [SSR] 82–41, when an ALJ concludes that a

REPORT AND RECOMMENDATION - 9

claimant is not disabled based on his or her ability to perform skilled or semi-skilled work, the ALJ must identify the transferable skills that the claimant possesses that can transfer to other jobs." (citing *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009))). Mr. Wilk thus asserts that because the ALJ did not make the necessary findings regarding transferability of skills, the Court cannot affirm based on the VE's description of the call-out operator. Dkt. 20 at 10.

The Commissioner does not respond to Mr. Wilk's argument that the VE described a semi-skilled occupation when she purported to describe the unskilled occupation of call-out operator. *See* Dkt. 24 at 5-7. Instead, the Commissioner argues that the VE provided a reasonable explanation for any conflict between the DOT and her description of the call-out operator, and thus the ALJ properly relied on the VE's testimony. *Id.* at 6. Specifically, the Commissioner contends SSR 00-4p provides that a reasonable explanation includes information about a particular job's requirements "obtained directly from employers" or from a VE's "experience in job placement," and that here, the VE "clarified . . . the duties of a Call-Out Operator, as performed locally, . . . based on her monthly contact with employers and job performance observation." *Id.*

The Court concludes that there is insufficient support in the record to justify the potential conflict between the DOT's and the VE's descriptions of call-out operators. As Mr. Wilk argues and the Commissioner does not contest, the VE's description of a call-out operator is more akin to the semi-skilled position of telemarketer than the DOT's description of call-out operator. Therefore, even if the VE testified based on information obtained directly from employers, the record is too ambiguous for the Court to make the determination, in the first instance, that there was a reasonable explanation for the conflict between the DOT and the VE's testimony regarding

REPORT AND RECOMMENDATION - 10

the call-out operator. Accordingly, the ALJ's reliance on the call-out operator cannot support his step-five finding.[5]

### c.  *Duties of the surveillance system monitor*

Finally, Mr. Wilk contends that the VE's testimony regarding the duties of the surveillance system monitor conflicted with the DOT. Dkt. 20 at 10-11. The DOT describes the surveillance system monitor as follows:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

DOT 379.367-010. The "Industry Designation" for the surveillance system monitor is "Government Services." *Id.* The VE testified, "Surveillance monitor is primarily in California and Florida where they have gated communities, and those communities have hundreds of people employed." Tr. 63-64.

Mr. Wilk argues that while the DOT surveillance system monitor is "a government occupation involved in monitoring public transportation terminals," the VE testified that such positions are with gated communities, and that a "person monitoring comings and goings in a private gated community is not a person monitoring a public transportation terminal for a government entity." Dkt. 20 at 11. The Commissioner responds that Mr. Wilk misreads the meaning of the "Industry Designation," which is "to be regarded as indicative of industrial

---

[5] In light of this ruling, the Court need not address Mr. Wilk's argument that substantial evidence does not support the ALJ's finding that he could work as a call-out operator. *See* Dkt. 20 at 13-16.

REPORT AND RECOMMENDATION - 11

location, but not necessarily restrictive." Dkt. 24 at 7 (quoting Parts of the Occupational Definition, 1991 WL 645965, at 3 (Industry Designation)). The Commissioner maintains that the Occupational Code for the surveillance system monitor indicates that it is "an occupation that does not fit logically into a precisely defined division or group, or could fit into two or more equally well." *Id.* (citing Parts of the Occupational Definition, 1991 WL 645965, at 1 (The Occupational Code Number)). According to the Commissioner, the surveillance system monitor position is not as narrowly defined as Mr. Wilk asserts, and the VE's description of the position as primarily performed by "gatekeepers at gated communities" is consistent with the DOT's description of the position as involving "property security."[6] *Id.*

The Court concludes that there is at least a potential conflict between the DOT's and VE's descriptions of the surveillance system monitor because the DOT focuses on public sector work and the VE discussed only private sector work. Although the Commissioner may be correct that the DOT's description of the surveillance system monitor is not as restrictive as Mr. Wilk argues, the Court cannot adopt her position because, given the vague and insufficient record in this case, doing so would require the Court to assume that the VE's testimony was consistent with the DOT. The Court cannot simply assume there is consistency and must rely instead on evidence in the record, which is lacking in this case. Consequently, it was improper for the ALJ to rely on the VE's testimony to find that Mr. Wilk could work as a surveillance system monitor.

---

[6] In his reply, Mr. Wilk seizes on the Commissioner's statement that the VE testified that surveillance system monitors work as "gatekeepers" for gated communities and argues that if the VE identified the occupation of "gatekeeper," then she would have identified a semi-skilled "light" occupation under the DOT. Dkt. 25 at 7 (citing DOT 372.667-030). This is a non-issue, however, because the VE testified that surveillance system monitors are employed primarily by "gated communities," not that they work as "gatekeepers." Tr. 63-64.

REPORT AND RECOMMENDATION - 12

### 3. *The VE's errors were harmful and remand is appropriate*

In sum, the Court cannot determine that substantial evidence supports the ALJ's finding that Mr. Wilk could work as either a call-out operator or surveillance system monitor.[7] *See Massachi*, 486 F.3d at 1153-54. The Court thus recommends a limited remand so that the ALJ can reevaluate what jobs, if any, Mr. Wilk can perform and issue new step five findings. On remand, the ALJ should solicit the testimony of a VE. The ALJ should comply with the requirements of SSR 00-4p and ask the VE whether there is any conflict between the DOT and the VE's testimony. If there is a conflict, the ALJ should elicit a reasonable explanation from the VE and explain his resolution of the conflict in his written decision.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reevaluate what jobs, if any, Mr. Wilk can perform and issue new step five findings. The ALJ should solicit the testimony of a VE, comply with the requirements of SSR 00-4p, ask the VE whether there is any conflict between the DOT and the VE's testimony, and if there is a conflict, elicit a reasonable explanation from the VE and explain his resolution of the conflict in his written decision.

---

[7] Even if the Court were to conclude that the ALJ properly relied on the VE's testimony that Mr. Wilk could work as a surveillance system monitor, remand would still be appropriate because the Court cannot say that there are a significant number of these jobs in the economy. *See, e.g.*, *Beltran v. Astrue*, 700 F.3d 386, 389-91 (9th Cir. 2012) (135 regional jobs and 1,680 national jobs not significant); *Vargas v. Colvin*, No. CV 13-2116-E, 2013 WL 6254784, at *3-*4 (C.D. Cal. Dec. 4, 2013) (140 regional jobs and 5,500 national jobs not significant); *Valencia v. Astrue*, No. C 11-06223, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (114 regional jobs and 14,082 national jobs not significant); *Cardona v. Colvin*, No. EDCV 12-0895-CW, 2013 WL 2285354, at *5 (C.D. Cal. May 22, 2013) (remand appropriate for ALJ to determine in first instance whether 300 regional jobs and 9,000 national jobs significant); *DiMartino v. Astrue*, No. 2:09-cv-1097-JCC, 2010 WL 2196098, at *3 (W.D. Wash. May 27, 2010) (remand appropriate for ALJ to determine whether 100 regional jobs and 5,000 national jobs significant).

REPORT AND RECOMMENDATION - 13

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **December 31, 2013**. If no objections are filed, the matter will be ready for the Court's consideration on **January 3, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 17th day of December, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge